## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

NASIR SALAAM,

               Petitioner,

    v.

JAMES SLAUGHTER, et al.,

               Respondents.

Civil No. 20-cv-07820 (RMB)

**OPINION**

**BUMB, CHIEF DISTRICT JUDGE**

      Petitioner, Nasir Salaam ("Petitioner"), a state prisoner proceeding *pro se*, brought this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his convictions in the Superior Court of New Jersey, Atlantic County, for robbery, assault, and related offenses. ("Petition" ECF No. 1.) This Court has reviewed the record and concludes that the petition must be denied.

## I.    PROCEDURAL HISTORY

      Petitioner initiated this action on June 25, 2020.  Shortly thereafter, Petitioner filed a motion seeking a stay and abeyance of the federal proceedings to permit exhaustion of his state-court remedies. ("Motion for Stay" ECF No. 3.)  On October 27, 2020, the Court granted the motion for a stay and abeyance and directed that the case be administratively terminated pending exhaustion of state remedies. (Order, ECF No. 7.)  On November 1, 2022, Petitioner moved to reopen the case,

representing that he had exhausted his state-court remedies. ("Motion to Reopen"
ECF No. 10.) The Court reopened the matter on December 22, 2022, and directed
Respondents to file an answer to the habeas petition. (Order, ECF No. 12.)

On April 5, 2023, Respondents filed an answer to the petition, supported by
the state-court record. (Answer, ECF No. 19.)  The Court denied several requests by
Petitioner for appointment of counsel.  (Order, ECF No. 20.)  Petitioner did not file a
reply brief.  The petition has been fully briefed,[1] and the matter is now ripe for
disposition.

## II.    BACKGROUND

The relevant facts are drawn from the New Jersey Superior Court, Appellate
Division's opinion on direct appeal:

> Atlantic County Indictment No. 08–02–0310 charged
> defendant with first-degree felony murder of Makhan
> Singh, *N.J.S.A.* 2C:11–3(a)(3) (count one); three counts of
> first-degree armed robbery, *N.J.S.A.* 2C:15–1 (count two as
> to Singh, count three as to Sonam Tsering, and count four
> as to Tanzi Zepa); second-degree conspiracy to commit
> armed robbery of employees of the AAR Gas Station,
> *N.J.S.A.* 2C:15–1 and 2C:5–2 (count five); second-degree
> aggravated assault of Zepa, *N.J.S.A.* 2C:12–1(b)(1) (count
> six); second-degree possession of two .22 caliber revolvers
> for an unlawful purpose, *N.J.S.A.* 2C:39–4(a) (count
> seven); third-degree unlawful possession of the two
> revolvers, *N.J.S.A.* 2C:58–4 and 2C:39–5(b) (count eight);
> third-degree hindering prosecution, *N.J.S.A.* 2C:29–3(b)(1)
> (count nine); and third-degree conspiracy to distribute
> heroin, *N.J.S.A.* 2C:35–5(a)(1) and (b)(3), and 2C:5–2

---

[1] Pursuant to Rule 5 of the Rules Governing § 2254 Cases in the United States
District Courts, "[t]he petitioner *may* submit a reply to the respondent's answer with
a time fixed by the judge."  (emphasis added).

(count twelve). Co-defendants Basir Biggins, Darrick Hudson, Tyler Hart and Gina McCrosson were also charged in various counts of the fifteen-count indictment.

A jury found defendant guilty of the armed robberies of Tsering and Zepa (counts three and four), a lesser-included assault of Zepa (count six amended), the two weapons offenses (counts seven and eight), hindering prosecution (count nine) and conspiracy to distribute heroin (count twelve). The jury was unable to reach a unanimous verdict on the three other counts in the indictment charging defendant, which related to the robbery and felony murder of Singh (counts one and two) and conspiracy to commit armed robbery (count five). The judge declared a mistrial on these counts.

Before a second trial could commence, defendant moved pro se to suppress his April 20, 2007 statement to police. After conducting a testimonial hearing, the judge denied the motion. Defendant then pled guilty to felony murder (count one). The plea was conditional, permitting appeal of the denial of the motion for a new trial and to suppress the statement. *R.* 3:9–3(f). The plea agreement encompassed a maximum sentence for the plea and the convictions after trial. Defendant was sentenced to the maximum term permitted by the plea agreement, an aggregate term of forty years with a thirty-year period of parole ineligibility.

The evidence adduced at trial revealed the following facts. On March 9, 2007, defendant, who was seventeen years old at the time, was at Hudson's sister's house. Defendant, Hudson, and Biggins were smoking marijuana. They contacted McCrosson and Hart to pick them up. McCrosson drove her father's black Audi to the house.

When McCrosson and Hart arrived, defendant, Hudson, and Biggins all sat in the back seat of the Audi. Hart offered to sell defendant his .22 caliber revolver, which defendant inspected and agreed to purchase with drugs. Biggins informed the others that he was also carrying a .22 caliber handgun. Defendant and his accomplices decided

3

to rob a gas station to obtain money for drugs. McCrosson parked the car near the AAR Gas Station.

When approaching the gas station, Hudson and Biggins both donned scarfs over their faces, and defendant wore a ski mask. Station attendants Tsering and Zepa were sitting outside. Defendant pointed his gun at them demanding that they "give it up." Meanwhile, Biggins and Hudson ran inside the mini-mart to rob the proprietor, Singh, at gun point. Biggins and Singh began "scuffling" and Biggins pistol-whipped Singh. Five shots were fired from inside the mini-mart. Hearing the gunshots, the attendants ran away.

Defendant fired one shot at the fleeing attendants, striking Zepa in the left lower flank, below his rib cage. Defendant then turned and fired two shots into the gas station. Singh was shot a total of six times and died at the scene.

An eye-witness followed the defendants running from the scene and obtained a license plate number for the black Audi. Police then proceeded to the home of McCrosson's father. Upon arrival, the police stopped McCrosson and Hart after they left the residence.

Police later arrested defendant, a juvenile, at Hudson's house. Defendant spoke to the police twice. On March 10 defendant's mother invoked defendant's right to counsel, terminating the questioning before defendant could incriminate himself.

After defendant retained counsel, his lawyer spoke to a co-defendant's attorney who suggested that the prosecutor would not offer a plea agreement to any defendant who had not given a statement. McCrosson, Hart, Biggins, and Hudson had already given statements. Before defendant was waived to adult court, defense counsel brought him to the Prosecutor's Office to waive his *Miranda* rights and give an incriminating statement to investigators from that office. Defendant claimed in this statement that Biggins murdered Singh. After giving his statement, the Attorney General's Office assumed responsibility for the prosecution.

4

> At trial, the State introduced defendant's videotaped statement.

*State v. Salaam*, No. A-2288-10T2, 2013 WL 3956356, at *1–2, 8 (N.J. Super. Ct. App.

Div. Aug. 2, 2013) (footnotes omitted).

Petitioner advances twelve grounds for federal habeas relief, which may be grouped into three principal categories: (1) constitutional challenges to the admission of his April 2007 custodial statement; (2) claims of ineffective assistance of counsel arising from counsel's advice, conflicts, and investigation at the pretrial stage; and (3) challenges to the jury instructions and to the constitutionality of Petitioner's sentence. (Petition, ECF No. 1 at 78-98.)

First, Petitioner contends that his videotaped statement—given when he was seventeen years old—was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and the Fifth and Fourteenth Amendments because his waiver of rights was not knowing, intelligent, or voluntary. (*Id.* at 78.)  A similar  claim was raised on direct appeal under state law, N.J.R.E. 410,[2] and later litigated in state post-conviction relief ("PCR") proceedings as an ineffective assistance of counsel claim. (*Id.* at 79.) In a published opinion, the Appellate Division reversed the initial denial of PCR and remanded for an evidentiary hearing on the voluntariness of the

---

[2] *See* Petitioner's direct appeal brief (ECF No. 19-6 at 22) (arguing that "Judge Isman erred in assessing the validity of that waiver by <u>Miranda</u> standards . . . "<u>Miranda</u> has no application to statements that are 'volunteered'") (quoting *State v. Brabham*, 413 N.J. Super. 196, 210 (N.J. Super. Ct. App. Div. 2010).

statement, ineffective assistance of counsel, and whether counsel operated under an actual conflict of interest within the meaning of *United States v. Cronic*, 466 U.S. 648 (1984). *State v. Salaam*, No. A–3989–14T4, 2017 WL 410243 (N.J. Super. Ct. App. Div. Jan. 17, 2017). Following an evidentiary hearing, the PCR court again denied relief, and the Appellate Division affirmed. *State v. Salaam*, No. A-2320-17T3, 2019 WL 3072546 (N.J. Super. Ct. App. Div. July 15, 2019), *certif. denied*, 240 N.J. 197 (2019).

Second, Petitioner raises multiple, closely related claims of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), and *Cronic*. These claims allege that retained counsel rendered constitutionally deficient representation by advising Petitioner, a juvenile, to give an incriminating statement without any plea agreement or prosecutorial assurances (Ground Two) (Petition, ECF No. 1 at 80-81); by operating under an actual conflict of interest through reliance on advice from counsel representing a co-defendant with adverse interests (Ground Three) (*id.* at 83); by failing to conduct a reasonable investigation before arranging Petitioner's statement (Ground Four) (*id.* at 85-86); by failing to consult with Petitioner's mother prior to advising him to waive his rights (Ground Five) (*id.* at 87-88); and by affirmatively misrepresenting the existence of a "deal" or understanding with the prosecution regarding sentencing exposure (Ground Six) (*id.* at 90-91). Each of these ineffective-assistance claims was raised in state PCR proceedings, addressed in the Appellate Division's 2017 remand decision, and

6

rejected on the merits following the evidentiary hearing and subsequent appeal. *Salaam*, 2017 WL 410243; *Salaam*, 2019 WL 3072546.

Third, Petitioner asserts several trial-error claims sounding in due process and fundamental fairness. (Petition, ECF No 1. at 92-94.) He alleges that the trial court failed to properly instruct the jury on the State's burden of proof beyond a reasonable doubt (Ground Seven) (*id.* at 93); failed to separately charge each robbery count (Ground Eight) (*id.* at 93); and failed to adequately instruct on attempted robbery as a lesser-included offense (Ground Nine) (*id.* at 94). These claims were raised and exhausted on direct appeal. *Salaam,* A-2288-10T2*,* 2013 WL 3956356, at *2–3.

Finally, Petitioner challenges the constitutionality of his aggregate forty-year sentence. (Petition, ECF No. 1 at 94-98.) He alleges that the sentence is grossly disproportionate to the sentences imposed on his co-defendants and violates the Eighth Amendment ban on cruel and unusual punishments and the rights to equal protection and due process under the Fourteenth Amendment.  (Grounds Ten and Eleven). (*Id.* at 94-97.) He further contends that the sentencing court failed to consider youth-related mitigating factors required by evolving Supreme Court precedent governing juvenile sentencing and consecutive terms, including principles later made retroactive by *Montgomery v. Louisiana*, 577 U.S. 190 (2016) (Ground Twelve). (*Id.* at 97-98.) These sentencing claims were not raised on direct appeal or in initial PCR proceedings and have been pursued instead through a *pro se* motion to correct an illegal sentence and related state appellate proceedings, some of which

post-dated the conclusion of Petitioner's PCR litigation. (*Id.* at 94-98.) Respondents oppose relief on the merits of each claim. (Answer, ECF No. 19 at 18-81.)

Together, these claims form the basis of the pending § 2254 petition and frame the constitutional questions now before the Court.

## III. LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas Petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). District courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a Writ of Habeas Corpus unless the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a Petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the Petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a Petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)). To the extent that a Petitioner's constitutional claims are unexhausted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d

Cir. 2005).  Where the parties dispute whether Petitioner fairly presented and

exhausted his constitutional claims,[3] the Court finds below that the claims are

properly denied on the merits.

## IV.  DISCUSSION

### A.  Ground One: Admission of Petitioner's Videotaped Statement

In Ground One, Petitioner contends that admission of his videotaped

statement, given as a seventeen-year-old upon the advice of his counsel, violated the

Fifth Amendment protection against self-incrimination under *Miranda v. Arizona*, 384

U.S. 436 (1966), because the statement was not knowing and voluntary. (Petition,

ECF No. 1 at 78-80.)  Petitioner raised this claim on direct appeal under state law.

("Petitioner's Direct Appeal Brief" ECF No. 19-6 at 22) (arguing that "Judge Isman

erred in assessing the validity of that waiver by Miranda standards . . . "Miranda has

no application to statements that are 'volunteered'") (quoting State v. Brabham, 413

N.J. Super. 196, 210 (N.J. Super. Ct. App. Div. 2010). The Court, however, will

deny the *Miranda* under *de novo* review because the unexhausted claim lacks merits.

In *Miranda*, the Supreme Court held that an individual held for interrogation

must be clearly informed that he has the right to consult with a lawyer and to have

the lawyer with him during interrogation . . . the right to remain silent and that

---

[3] Respondents contend Petitioner failed to exhaust Grounds One (never raised a *Miranda* Claim), Five (did not present ineffective assistance of counsel claim to the Appellate Division), Six (failed to fully raise claim that counsel made misstatements as to existence of plea), Ten and Eleven (did not fully raise claims as to sentence disproportionality).  (Answer at 83-87.)

anything stated can be used in evidence against him[.]  *Miranda*, 384 U.S. 436, 471–

72 (1966).  "The presence of an attorney, and the warnings delivered to the

individual, enable the defendant under otherwise compelling circumstances to tell his

story without fear, effectively, and in a way that eliminates the evils in the

interrogation process."  *Id.* at 466.

    The Appellate Division, on direct appeal, found the following facts, which this

Court accepts as true because Petitioner has not established the facts are incorrect by

clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

> Police later arrested defendant, a juvenile, at Hudson's
> house. Defendant spoke to the police twice. On March 10
> defendant's mother invoked defendant's right to counsel,
> terminating the questioning before defendant could
> incriminate himself.
>
> After defendant retained counsel, his lawyer spoke to a co-
> defendant's attorney who suggested that the prosecutor
> would not offer a plea agreement to any defendant who
> had not given a statement. McCrosson, Hart, Biggins, and
> Hudson had already given statements. Before defendant
> was waived to adult court, defense counsel brought him to
> the Prosecutor's Office to waive his *Miranda* rights and
> give an incriminating statement to investigators from that
> office. Defendant claimed in this statement that Biggins
> murdered Singh. After giving his statement, the Attorney
> General's Office assumed responsibility for the
> prosecution.
>
> At trial, the State introduced defendant's videotaped
> statement.

*Salaam*, 2013 WL 3956356, at *2.

    Petitioner received the protections against self-incrimination afforded by the

Fifth Amendment and *Miranda*, he was represented by counsel and advised of his

11

rights, which he voluntarily waived.  Accordingly, the Court denies Ground One on the merits.  Petitioner's ineffective assistance of counsel claims based on counsel's advice to give a statement fall under the Sixth Amendment and are addressed below.

### B.  Grounds Two Through Six: Ineffective Assistance of Counsel

Grounds Two through Six allege various forms of ineffective assistance of counsel, by advising Petitioner, a juvenile, to give an incriminating statement without any plea agreement or prosecutorial assurances (Ground Two) (Petition, ECF No. 1 at 80-81); by operating under an actual conflict of interest through reliance on advice from counsel representing a co-defendant with adverse interests (Ground Three) (*id.* at 83); by failing to conduct a reasonable investigation before arranging Petitioner's statement (Ground Four) (*id.* at 85-86); by failing to consult with Petitioner's mother prior to advising him to waive his rights (Ground Five) (*id.* at 87-88); and by affirmatively misrepresenting the existence of a "deal" or understanding with the prosecution regarding sentencing exposure (Ground Six) (*id.* at 90-91), all arising from counsel's advice that Petitioner give a statement to law enforcement on April 20, 2007 – more than nine months prior to indictment. (Petition, ECF No. 1 at 81-91.)

At the outset, the constitutional right to effective assistance of counsel only begins "at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)); *See, e.g., Philmore v. McNeil*, 575 F.3d 1251, 1258-59 (11th

Cir. 2009) (holding Sixth Amendment right to counsel had not attached at time

defendant made his statements to police because there had been no formal charge,

preliminary hearing, indictment, or arraignment); *United States v. Edelmann*, 458 F.3d

791, 804 (8th Cir. 2006) (same); *Sweeney v. Carter*, 361 F.3d 327, 333-34 (7th Cir.

2004) (same); *United States v. Moody*, 206 F.3d 609, 614 (6th Cir. 2000) (analyzing

precedent and holding that a "bright line" must be applied to determine when the

right to effective assistance of counsel attaches); *Claudio v. Scully*, 982 F.2d 798, 802

(2d Cir. 1992) (concluding Sixth Amendment right to effective assistance of counsel

did not apply to defendant's claim of deficient representation by attorney who took

his client to police for questioning before charges were ever filed). As stated in

*Claudio*, "formal proceedings are a necessary condition for the attachment of the

Sixth Amendment right to counsel." 982 F.2d at 802.

One day after the homicide, March 10, 2007, Petitioner's co-defendants gave

statements to law enforcement.  ("June 29, 2017 PCR Mot. Tr." ECF No. 19-70 at

21T106:10 to 107:22.)  Petitioner, as a juvenile, had not been waived to adult court

when he gave a counseled statement to law enforcement on April 20, 2007. *Salaam*,

2013 WL 3956356, at *2.   "The determination that the trial court must make at an

adult certification hearing . . . deal[s] with whether a defendant should be exempted

from criminal prosecution because he falls within a category of persons who, in the

eyes of the law, are not viewed as fully responsible for their acts."  *United States v.*

*A.R.*, 38 F.3d 699, 703 (3d Cir. 1994). "[A]dult certification hearings have repeatedly

[been] characterized [] as civil in nature, primarily because they result only in a

decision upon the status of the individual. *Id.* at 703. "The determination is not one of guilt or innocence . . . but rather concerns the manner in which the state elects to proceed . . . [and] the district court is entitled to assume that the juvenile committed the offense charged for the purpose of the transfer hearing." *Id.* Therefore, the Sixth Amendment had not attached when Petitioner's counsel advised him to give a statement at the Prosecutor's Office on April 20, 2007, before he was waived into adult court and more than nine months before his indictment.

Even if the right to counsel had attached, under the *Strickland* standard for ineffective assistance of counsel claims in violation of the Sixth Amendment, a petitioner must "show both that his counsel provided deficient assistance and that there was prejudice as a result." *Harrington v. Richter*, 562 U.S. 86, 104. Deficient performance is that which falls below an objective standard of reasonableness. *Id.* (citation modified).

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (1984) (citation modified).

Prejudice requires a demonstration of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "*Strickland* asks whether it is "reasonably likely" the result would have been different." *Id.* at 111 (citation modified). On habeas review under § 2254(d), "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

Here, counsel's strategy enabled Petitioner to present an exculpatory narrative without testifying, and this strategy contributed to acquittals and hung counts on the most serious charges, including felony murder, as the Appellate Division held on PCR remand review:

> Defendant fails to prove that he was prejudiced by counsel's assistance because defendant does not demonstrate a reasonable probability that, but for counsel's advice, the result would have been different, nor does defendant offer an alternative strategy counsel could have pursued that would have had a reasonable probability of a more favorable outcome. Each co-defendant had provided statements placing defendant at the scene with a gun. Defendant's second statement allowed counsel to present a more favorable version of events to the jury without subjecting defendant to cross-examination. If counsel had not advised defendant to cooperate, the overwhelming evidence against defendant might well have led the jury to believe defendant was more closely connected to the murder than his second statement suggested. *See Fritz,* 105 N.J. at 52.
>
> The PCR remand court observed: "[Counsel's] strategy choices appeared to have some success for his client since the jury was unable to reach a verdict as to the felony murder charge." *See Castagna*, 187 N.J. at 316 (noting defense counsel's high-risk strategy "[led] to a not guilty verdict of the most serious offense"). Defendant fails to

> show "a reasonable probability" that but for counsel's
> advice, defendant would not have pled guilty after the jury
> could not reach a verdict on all charges. Defendant's
> second statement may well have contributed to the jury's
> inability to convict defendant of felony murder

*State v. Salaam*, No. A-2320-17T3, 2019 WL 3072546, at *6–7 (N.J. Super. Ct. App.

Div. July 15, 2019); *see also* May 8, 2015 PCR Opinion (ECF No. 19-19 at 11-14)

(quoting February 24, 2010 suppression hearing testimony).  Even without a promise

of a plea agreement, counsel's strategy was reasonable because, although the Atlantic

City Prosecutor's Office had a policy not to make a plea offer or any other promises

at early stages of an investigation, "people who cooperated, whether it would be

early or late, would still have some benefit from their cooperation based on letting

the judge know that they had cooperated." ("June 29, 2017 PCR Mot. Tr." ECF No.

19-68 at 21T106:10 to 113-1; "Oct. 16, 2017 PCR Opinion" ECF No. 19-27 at 7.)

That Petitioner later elected to plead guilty before a second trial does not

negate the tangible benefits of the acquittals and hung counts realized at trial under

defense counsel's trial strategy.  There is no reasonable probability that the outcome

would have been more favorable absent counsel's advice.  Therefore, the Court

denies Grounds Two through Six of the Petition.

## C.  Grounds Seven, Eight, and Nine: Jury Instructions

Grounds Seven through Nine challenge the adequacy of jury instructions.

(Petition, ECF No. 1 at 92-94.) Federal habeas review of jury instructions is sharply

limited. The question is not whether the instructions were imperfect under state law,

but whether there is a reasonable likelihood that the jury applied them in a manner

16

that violated due process. *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991), *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir. 2001). The burden of demonstrating that an erroneous instruction was so prejudicial that it impinges on the constitutional validity of a judgment is even greater than the showing required to establish plain error on direct appeal. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Duncan*, 256 F.3d at 203. Whether a jury instruction caused harm of a constitutional dimension depends on "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *Estelle*, 502 U.S. at 72; *Henderson*, 431 U.S. at 154. Thus, a petitioner must show not merely that the instruction was undesirable, erroneous, or even universally condemned, but that it violated a constitutional right. *Id.*

The trial judge fully charged the jury regarding the prosecution's burden:

> The defendant on trial is presumed to be innocent and unless each and every essential element of an offense charged is proved beyond a reasonable doubt, the defendant must be found not guilty of that charge. The burden of proving each element of a charge beyond a reasonable doubt rests upon the State, and that burden never shifts to the defendant. The defendant in a criminal case has no obligation or duty to prove his innocence or offer any proof relating to his innocence. The prosecution must prove its case by more than a mere preponderance of the evidence, yet not necessarily to an absolute certainty. Rather, the State has the burden of proving the defendant guilty beyond a reasonable doubt.
>
> Some of you may have served earlier as jurors in a civil case and there you were told that it is necessary to prove only that a fact is more likely true than not true. But in criminal cases the State's proof must be more powerful than that beyond a reasonable doubt.

> Now a reasonable doubt as we defined it under our law is an honest and reasonable uncertainty in your minds about the guilt of the defendant after you have given full and impartial consideration to all of the evidence. A reasonable doubt may arise from the evidence itself or from a lack of evidence. It is a doubt that a reasonable person hearing the same evidence would have. Proof beyond a reasonable doubt is proof, for example, that leaves you firmly convinced of the defendant's guilt. In this world we know very few things with absolute certainty. And in criminal cases the law does not require proof that overcomes every possible doubt.

("May 26, 2009 Trial Tr." ECF No. 19-58 at 42:16 to 43:23.)

The trial judge also guided the jury through the verdict form:

> And you'll note the first question that you are asked to determine is whether the defendant, in the course of committing a theft did knowingly threaten immediate bodily injury to Mahkan Singh and/or did purposely put Mahkan Singh in fear of immediate bodily injury, robbery, how do you find the defendant?

> And then if, and only if, you have found the defendant guilty of question one would you answer 1a, and that is, [w]hether the defendant, Nasir Salaam, on or about the 9th day of March 2007, in the course of committing a theft did knowingly threaten immediate bodily injury to Mahkan Singh and/or did purposely put Mahkan Singh in fear of immediate bodily injury while armed with and/or threatening the immediate use of a deadly weapon; that makes the one degree higher, one degree more serious, if you will, and that's what is known as robbery while armed, how do you find the defendant?

> Similarly, you are asked in question number two, about robbery of Sonam Tsering, and you are asked in question 2a, [i]f you find the defendant guilty of that robbery, whether it was a robbery while armed with or threatening the immediate use of a deadly weapon. And then three, is

> the robbery of Tanzi Zepa, the allegation of that followed
> by 3a robbery while armed.

(*Id.* at 61:3 to 62:4.)

The trial judge next instructed the jury on the elements of robbery and

criminal attempt:

> [T]he allegations here alleged that the theft was never
> completed but rather attempted. It was not completed
> because things went wrong, that is what the State alleges.
> The defense counters that by its arguments with regard to
> the actions of Basir Biggins being things totally not in
> contemplation of this defendant. The theft does not
> therefore have to be completed, and no money or property
> need be taken so long as an attempt to commit a theft is
> said to have occurred.

(*Id.* at 63:22 to 64:6.)

> [A] person is guilty of attempt if acting purposefully he
> does anything that under the circumstances as a
> reasonable person would believe them to be[,] was an act
> constituting a substantial step in a course of conduct
> planned to culminate in the commission of the crime. The
> step taken must be one that is strongly corroborative of the
> defendant's criminal purpose. The accused must be shown
> to have had a firmness of criminal purpose in light of the
> step or steps he had already taken. These preparatory steps
> must be substantial and not just very remote preparatory
> acts.

(*Id.* at 64:7-19.)

Furthermore, the record reflects that the court repeatedly emphasized the

presumption of innocence, the State's burden beyond a reasonable doubt, and the

absence of any burden on the defendant. (*Id.* at 42:16 to 43:23.)

The Appellate Division opined:

Defendant argues that the instructions failed to explain the law with reference to the facts of the case. He also argues that the jury instructions were favorable to the State, and lacked defense-favorable nuances depriving him of his due process rights and a fair trial. We find no support for this argument. The jury was unable to reach a verdict on the most serious charge of felony murder, indicating that it understood the nature of the defense.

We must "evaluate defendant's claim in light of the totality of the entire charge, not in isolation." *State v. Miller*, 205 N.J. 109, 127 (2011) (citations and internal quotation marks omitted). Taken as a whole, the jury charge was not misleading, and was not so defective that it "raise[d] a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." *State v. Atwater*, 400 N.J.Super. 319, 336 (App.Div.2008) (alteration in original) (citations and internal quotation marks omitted).

*Salaam*, 2013 WL 3956356, at *8.

This Court agrees. Viewed as a whole, the charge did not infect the trial with constitutional error. *Estelle*, 502 U.S. at 72; *Henderson*, 431 U.S. at 154. Under 28 U.S.C. § 2254(d), the state court's rejection of these claims was neither contrary to nor an unreasonable application of clearly established federal law. Therefore, the Court denies relief on Grounds Seven, Eight and Nine of the Petition

### D. Grounds Ten, Eleven and Twelve: Excessive Sentence

Across Grounds Ten, Eleven, and Twelve, Petitioner challenges the length and structure of his sentence, asserting disproportionality as compared to his co-defendants and alleging constitutional error in the sentencing court's consideration of youth-related factors. (Petition, ECF No. 1 at 94-98.)  It is disputed whether available

20

state court remedies were exhausted for Grounds Ten and Eleven. Nonetheless, a habeas court may deny unexhausted claims on the merits.  28 U.S.C. § 2254(b)(2).

As a threshold matter, sentencing determinations are generally matters of state law and are not cognizable on federal habeas review absent a showing that the sentence was imposed on constitutionally proscribed grounds.  *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 43 (3d Cir. 1984); *see also Bernard v. Sorber*, No. CV 22-1668, 2023 WL 1805198, at *6 (E.D. Pa. Feb. 7, 2023) (collecting cases).

Grounds Ten and Eleven, that Petitioner's 40-year aggregate sentence is grossly disproportionate because it is significantly more severe than the sentences imposed on his co-defendants in violation of the Eighth Amendment's ban on cruel and unusual punishments and Fourteenth Amendment due process and equal protection principles, are meritless.  "The contention that gross disparity in sentences violates due process or equal protection lacks merit." *Jones*, 725 F.2d at 43.

Ground Twelve, premised on the Supreme Court decision in *Miller v. Alabama*, made retroactively applicable by *Montgomery v. Louisiana*, 577 U.S. 190 (2016) (Petition, ECF No. 1 at 97-98), likewise fails. Petitioner's 40-year aggregate sentence falls short of the Eighth Amendment prohibition on "mandatory life-without-parole sentences for juveniles."  *Miller v. Alabama*, 567 U.S. 460, 470 (2012).  Moreover, under state law, Petitioner is eligible for review of his sentence after twenty years. *See State v. Comer*, 249 N.J. 359 (2022) (holding "under the State Constitution that juveniles may petition the court to review their sentence after 20 years.")

Accordingly, Grounds Ten, Eleven, and Twelve are denied because state law claims regarding proportionality are not cognizable on habeas review, and Petitioner's sentence does not violate the Eighth or Fourteenth Amendments.

## V.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a certificate of appealability may issue only if the Petitioner has made "a substantial showing of the denial of a constitutional right." Where, as here, the Court has rejected Petitioner's claims on the merits, the requisite showing is satisfied only if reasonable jurists could debate whether the petition should have been resolved differently or conclude that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Where a claim is denied on procedural grounds, a certificate of appealability may issue only if jurists of reason would find both the procedural ruling and the underlying constitutional claim debatable. *Slack*, 529 U.S. at 484.

Having carefully considered the record and the governing law, the Court concludes that Petitioner has not met this standard. Petitioner's claims are either noncognizable on habeas review or fail on the merits.

Accordingly, a certificate of appealability shall not issue.

## VI.    CONCLUSION

For the foregoing reasons, the Court finds that Petitioner's habeas petition is **DENIED** in its entirety and the Court declines to issue a certificate of appealability.

22

An appropriate order follows.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

Dated: December 22, 2025